**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| **CEDRIC MCKENITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 5:25-00600** |
| **v.** | ) | |
| | ) | |
| **WARDEN MESSENGER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1) filed on October 10, 2025; (2) Respondent's Response to Order to Show Cause requesting Petitioner's Petition be denied and dismissed (Document No. 6), filed on December 1, 2025; and (3) Petitioner's "Combined Reply to the Respondent's Response to Rule to Show Cause & Motion for [Summary] Judgment" (Document No. 18), filed on January 15, 2026. By Standing Order, this matter was referred to a United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined the record and considered the applicable law, the undersigned has concluded that the Petitioner's Petition (Document No. 1) and Motion for Summary Judgment (Document No. 18) should be denied, and Respondent's request for dismissal (Document No. 6) should be granted.

**PROCEDURAL HISTORY**

On October 10, 2025, Petitioner, acting *pro se*, filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Document No. 1).[1] In his Petition, Petitioner complains that his

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v.*

due process rights were violated during disciplinary proceedings. (Id.) First, Petitioner alleges that his due process rights were violated when he "was not IDed for the incident report with the allotted timeframe permitted by Federal Bureau of Prison's Program Statement 5270.09" and 28 C.F.R. § 5415(a). (Id., p. 6.) Second, Petitioner claims that his due process rights were violated when he "was not provide a copy of the UDC decision or given the opportunity to appeal their decision" pursuant to Program Statement 5270.09. (Id., p. 7.) Third, Petitioner claims that his due process rights were violated "when the reporting officer neglected to provide 'all known facts' in the description of the incident report" pursuant to Program Statement 5270.09. (Id.) Petitioner explains that the reporting officer "didn't provide the names of the other present at the scene preventing [Petitioner] from calling witnesses to prove [his] innocence at the DHO." (Id.) Fourth, Petitioner argues that he has "new evidence that wasn't available at the time of [his] DHO hearing" that proves his innocence. (Id., p. 8.) Petitioner explains that he has an "affidavit from a witness," who is "the individual responsible for the alleged misconduct." (Id.) Fifth, Petitioner claims that his due process rights were violated when "the DHO didn't even look at the 'documentary evidence' that [Petitioner] presented to him . . . before he handed down his decision" and "falsified the DHO Report to say that [Petitioner] did not present any 'documentary evidence.'" (Id., p. 9.) Sixth, Petitioner claims that his due process rights were violated when he "did not receive a written copy of the DHO Report within the allotted time permitted by Program Statement 5270.09" and the DHO "falsified the DHO report to say that [Petitioner] received a copy of the report on 12/13/2024." (Id.) Petitioner asserts that he did not receive a copy of the DHO report and "this was intentionally done to prevent [Petitioner] from appealing the Incident Report, which is a direct

_Kerner_, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

violation of due process." (Id.) Seventh, Petitioner claims that his due process rights were violated when "the authorized, unsanctioned process known as 're-write' was weaponized against [Petitioner] and used as a one size fits all solution to clean up several different violations to [his] due process rights." (Id., p. 10.) Petitioner further claims that the "re-write" process was used to punish Petitioner by keeping him in the Special Housing Unit ("SHU") for several weeks. (Id.) As relief, Petitioner requests that the Court "overturn the guilty findings of the DHO in Incident Report # 3972241, re-instate [his] 41 days of good time, and expunge this Incident Report from [his] record." (Id., p. 8.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated April 9, 2025 (Document No. 1-1, pp. 1 - 3); (2) A copy of the "Discipline Hearing Officer Report" dated December 13, 2024 (Id., pp. 4 – 8); (3) A copy of the "Incident Report" dated October 13, 2024, where Petitioner is charged with violation Offense Code 113, Possessing Drugs/Alcohol, on July 28, 2024 (Id., p. 9); (4) A copy of Petitioner's "Informal Resolution Form" dated April 10, 2025 (Id., pp. 10 – 11); (5) A copy of Petitioner's "Request for Administrative Remedy" dated April 21, 2025 (Id., p. 12); (6) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated May 8, 2025 (Id., p. 13); (7) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated May 20, 2025 (Id., p. 14); (8) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated June 7, 2025 (Id., p. 15); (9) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated June 8, 2025 (Id., p. 16); (10) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 3, 2025 (Id., p. 17); (11) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 13, 2025 (Id., p. 18); (12) A copy of a "Rejection Notice" from the

3

Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated August 1, 2025 (Id., p. 19); (13) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated August 13, 2025 (Id., p. 20); (14) A copy of a BOP employee's "Memorandum for Administrative Remedy Coordinator" dated August 13, 2025, concerning Petitioner's appeal delay (Id., p. 21); (15) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated August 7, 2025 (Id., p. 22); and (16) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated August 26, 2025 (Id., p. 23).

By Order entered on October 17, 2025, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 5.) On December 1, 2025, Respondent filed his Response to the Order to Show Cause. (Document No. 6.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner failed to exhaust administrative remedies" (Id., pp. 6 – 8); and (2) "Petitioner received the rights afford pursuant to Wolff" (Id., pp. 8 – 16).

As Exhibits, Respondent attaches the following: (1) The Declaration of Misty Shaw (Document No. 6-1, pp. 2 - 3); (2) A copy of Incident Report No. 3972241 dated October 12, 2024 (Id., pp. 5 - 8); (3) A copy of the Discipline Hearing Officer Report dated December 13, 2024 (Id., pp. 10 – 13); (4) A copy of the "Notice of Discipline Hearing Before the DHO" form dated October 21, 2024 (Id., p. 15); (5) A copy of Petitioner's "Inmate Rights at Disciplinary Hearing" form dated October 21, 2024 (Id., p. 17); and (6) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated November 17, 2025 (Id., pp. 19 – 38).

By Order and Notice entered on December 1, 2025, the undersigned advised Petitioner of

4

his right to file a Reply to Respondent's Response. (Document No. 7.) On January 15, 2026, Petitioner filed his "Combined Reply to the Respondent's Response to Rule to Show Cause and Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 18 and 20.) As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's Declaration with Exhibits (Document No. 20-1); (2) A copy of Petitioner's "Informal Resolution Form" dated April 10, 2025 (Document No. 20-2, p. 1); (3) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated May 8, 2025 (Id., p. 2); (4) A copy of a letter from Petitioner dated June 3, 2025 (Id., p. 3); (5) A copy of Petitioner's "Request for Administrative Remedy" dated April 21, 2025 (Remedy ID No. 1247405-F1) (Id., p. 4); (6) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated April 9, 2025 (Remedy ID No. 1237019-R1) (Id., p. 5); (7) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated June 7, 2025 (Remedy ID No. 1237019-R3) (Id., p. 6); (8) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated June 8, 2025 (Remedy ID No. 1237019-R5) (Id., p. 7); (9) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 3, 2025 (Remedy ID No. 1237019) (Id., p. 8); (10) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 13, 2025 (Remedy ID No. 1237019) (Id., p. 9); (11) A copy of a letter dated August 11, 2025, from Petitioner to the Administrative Remedy Coordinator requesting an extension of time (Id., p. 10); (12) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated August 13, 2025 (Remedy ID No. 1237019-R7) (Id., p. 11); (13) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated August 26, 2025 (Remedy ID No. 1237019) (Id., p. 12); (14) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated April 16, 2025 (Remedy ID No. 1237019-R1) (Id., p. 13); (15) A copy of a "Rejection

5

Notice" from the Administrative Remedy Coordinator at the Central Office dated May 20, 2025 (Remedy ID No. 1237019-A1) (Id., p. 14); (16) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated May 22, 2025 (Remedy ID No. 1237019-A2) (Id., p. 15); (17) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated June 11, 2025 (Remedy ID No. 1237019-R2) (Id., p. 16); (18) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated June 23, 2025 (Remedy ID No. 1237019-R3) (Id., p. 17); (19) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at USP Lee dated July 16, 2025 (Remedy ID No. 1247405-F1) (Id., p. 18); (20) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated July 28, 2025 (Remedy ID No. 1237019-A3) (Id., p. 19); (21) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated August 1, 2025 (Remedy ID No. 1237019-R5) (Id., p. 20); (22) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated August 7, 2025 (Remedy ID No. 1237019-A4) (Id., p. 21); (23) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated August 20, 2025 (Remedy ID No. 1237019-R7) (Id., p. 22); (24) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated August 22, 2025 (Remedy ID No. 1237019-R8) (Id., p. 23); (25) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Central Office dated September 5, 2025 (Remedy ID No. 1237019-A5) (Id., p. 24); (26) A copy of the Incident Reports charging a violation of Offense Code 113, Possessing Drugs/Alcohol, dated July 29, 2024, August 7, 2024, and October 12, 2024 (Id., pp. 25 – 27); (27) A copy of the

Discipline Hearing Officer Report dated December 13, 2024 (Id., pp. 28 – 31); (28) A copy of a BOP employee's "Memorandum for Administrative Remedy Coordinator" dated August 13, 2025, concerning Petitioner's appeal delay (Id., p. 32); (29) A copy of certified mail return receipt card address to the FBOP Regional Office (Id., pp. 33 – 34); (30) A copy of Petitioner's TRULINCS message dated April 16, 2025, with the notation of "to be attached to BP-8" (Id., p. 35); (31) A copy of Petitioner's TRULINCS message dated June 11, 2025, with the notation of "to Regional Office, Memo for Valid Reasons for Delay as Described in § 542.14(b)" (Id., p. 36); (32) A copy of a document entitled "Documentary Evidence" dated August 20, 2024 and September 24, 2024 (Id., pp. 37 – 46); (33) A copy of an Affidavit from Inmate Seaton Letts (Id., p. 47); (34) A copy of an undated letter from Petitioner directed to the Regional Office regarding his appeal of the DHO decision (Id., p. 48); (35) A copy of a document entitled "New Appeal" (Id., p. 49); and (36) A copy of a three-page letter regarding Petitioner's request to appeal that is undated and unclear as to who the letter is directed (Id., pp. 50 – 52).

## FACTUAL BACKGROUND

**Inmate Discipline Process:**

In his Response, Respondent addresses the Bureau of Prisons' ("BOP") rules for inmate discipline, which are found in 28 C.F.R. § 541 *et seq.* According to these rules, when a staff member believes an inmate has violated a BOP regulation, the staff member prepares an incident report and provides the inmate with a written copy of the charges against him, normally within 24 hours of when staff becomes aware of the alleged violation. See 28 C.F.R. § 541.5(a). Thereafter, an investigating officer is assigned to inform the inmate of the charges and take a statement from the inmate concerning the incident. An inmate is advised of the inmate's right to remain silent, and

7

that the inmate's silence may be used to draw an adverse inference against the inmate. While an adverse inference may be drawn from the inmate's silence, it may not standing alone, be used to support a finding that the inmate committed the prohibited act. Id. § 541.5(b).

Next, a Unit Disciplinary Committee ("UDC") will review the incident report, usually within five days of its issuance. The inmate is permitted to appear and make a statement and present documentary evidence before the UDC, either in person or electronically, except during the UDC's deliberations, or if institutional security would be jeopardized by the inmate's presence. Id. § 541.7(c), (d), and (e). The UDC then makes a decision based upon at least some evidence, and if there is conflicting evidence, based upon the greater weight thereof. Id. § 541.7(e).

The UDC may determine whether the inmate committed the prohibited act as charged or refer the case to a Disciplinary Hearing Officer ("DHO") for further proceedings. Id. § 541.7. When the alleged violation involves the violation of serious BOP rules and warrants consideration for other than minor sanctions, it is mandated that the UDC refers the charges to the DHO for further proceedings. Id. § 541.7(a)(4). When charges are referred to the DHO, the UDC advises the inmate of the rights afforded to the inmate at the DHO hearing. Id. § 541.7(g). An inmate may again request to have a staff representative and/or witnesses at the DHO hearing. Id. § 541.8. An inmate may request a staff representative and have witnesses at the DHO hearing. Id. § 541.8. If the inmate requests staff representation, a staff representative will be available to assist the inmate with the following: (1) Understanding the charges and potential consequences; (2) Speak with and schedule witnesses; (3) Obtain written statements; and (4) Otherwise help the inmate prepare evidence for presentation at the DHO hearing. Id.

At the hearing, the inmate may make a statement, present documentary evidence, and

present witnesses on his behalf, subject to institutional security issues. Id. § 541.8(f). The DHO

considers all evidence presented at the hearing and determines whether the inmate committed the

infraction, or whether further investigation is needed. Id. § 541.8(a). The DHO prepares a written

record of the proceedings, which need not be verbatim. The record should document the

advisement of the inmate's rights, the DHO's decision, the evidence relied upon in making the

decision, and the reasons for the sanctions imposed. Id. § 541.8(h).

**Incident Report No. 3972241:**

On October 12, 2024, the reporting officer (Officer James Ewing) prepared a re-write of

an incident report for a violation of Prohibited Act Code 113, Possession of Drugs/Alcohol, at USP

Terre Haute, Indiana. (Document No. 6-1, p. 5.) The reporting officer described the incident in the

report stating that on July 28, 2024, the officer discovered items in Petitioner's property that later

tested positive for methamphetamine. (Id.)

An investigation was conducted into the incident on August 7, 2024. (Id., p. 7.) During the

investigation, Petitioner made the following statement: "Make sure the other staff that was present

make a statement. I want the cameras reviewed in the corridor by medical reviewed. He thinks I

was reaching and putting something in the laundry bag." (Id.) The investigator reviewed the video

and found that it was not conclusive because there were no cameras that showed the entire incident.

(Id.) Following the conclusion of the investigation concerning the incident, Petitioner received a

copy of the rewritten incident report on October 13, 2024.[2] (Id., pp. 5 – 7.)

On October 21, 2024, a UDC hearing was conducted and Petitioner made the following

---

[2] It is further noted as follows: "Incident report was served to the inmate within 24 hours. It was subsequently suspended for AUSA Referral. The incident report was served to the inmate again following return from the FBI. Incident report served after rewrite." (Document No. 6-1, p. 7.)

statement: "This is still going on? I'm not guilty." (Id., p. 6.) The UDC referred the incident report to the DHO for further proceedings. (Id.) On the same day (October 21, 2024), Petitioner was advised of his rights before the DHO and received his Notice of Discipline Hearing Before the DHO. (Id., p. 15.) Petitioner declined witnesses and a staff representative at that time. (Id.)

The DHO hearing was conducted on October 24, 2024. (Id., p. 10.) Petitioner was present at the hearing, stated he understood his rights, and declined staff representation and witnesses. (Id., pp. 10 – 11.) The DHO noted that Petitioner did not present any documentary evidence. (Id., p. 11.) The DHO listed the evidence considered as follows: Incident Report, Staff Memorandum, Photo Evidence, Petitioner's Disciplinary History, Video Evidence, Petitioner's statements to the investigator and the UDC, and Petitioner's statement to the DHO that "the drugs were not mine." (Id., pp. 11 – 12.) After consideration of the evidence, the DHO determined that Petitioner "committed the prohibited act of a Code 113: Possession of Drugs" by the greater weight of the evidence. (Id., p. 13.) The DHO sanctioned Petitioner to the disallowance of 41 days of Good Conduct Time and 180 days of loss of telephone and commissary privileges. (Id.) The DHO explained the reason for the sanctions imposed. (Id.) The DHO Report was completed and provided to Petitioner on December 13, 2024. (Id.)

## STANDARD

### Judgment on the Pleadings:

Respondent's Response requests the dismissal of Petitioner's § 2241 petition on various grounds. This request will be treated by the undersigned as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009). A motion to dismiss under Rule 12(c) applies the same standard of review as a

motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12 (b)(6), and both motions may be filed in *habeas* actions. Id. at 138-39; see also Walker v. True, 399 F.3d 315, 319, n. 1. (4ᵗʰ Cir. 2005); Martin v. U.S. Parole Commission, 2018 WL 2135009, at *1 (D. Md., May 9, 2018); Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings); Rule 1(b), *Rules Governing Section 2254 Cases in the United States District Courts*(Rule 1(b) provides that the Rules pertaining to Section 2254 proceedings shall apply to habeas petitions brought pursuant to Section 2241). When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. See Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014); Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). However, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey, 759 F.3d at 353 (quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a Rule 12(c) motion in a federal habeas case must consider "the face of the petition and any attached exhibits." Walker, 589 F.3d at 139 (quoting Wolfe, 565 F.3d at 169)(internal markings omitted). Additionally, the Court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into one for summary judgment. Id. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the [petition] and authentic." Philips v. Pitt County Memorial Hospital, 572 F.3d 176, 180 (4th Cir. 2009).

**Summary Judgment**

11

Petitioner has filed a Motion for Summary Judgment. Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which is also applicable in *habeas* proceedings. See Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991). Summary judgment is appropriate under Rule 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### 1.    Failure to Exhaust:

Generally, a federal inmate must exhaust available administrative remedies before filing a writ of habeas corpus in federal court. Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)(requiring exhaustion in a Section 2241 action). Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See Timms v. Johns, 627 F.3d 525, 530-33 (4th Cir. 2010); McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the

BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

Unlike the exhaustion requirement for Section 1983 and Bivens actions, the exhaustion requirements for Section 2241 Petitions are judicially imposed. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.), cert. denied, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)); also see Reeder v. Phillips, 2018 WL 2434003, * 3 (N.D.W.Va. June 12, 2008)(Since the statute authorizing habeas matters does not expressly require administrative exhaustion, the court retains discretion to disregard the exhaustion requirement in "pressing circumstances."). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]xhaustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals." Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Reeder, 2008 WL 2434003, at * 3("Unless the agency is *certain* to rule adversely, however, a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion.")(emphasis added).

13

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. Id. § 542.13. If informal resolution is unsuccessful, the inmate must submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests. Id. § 542.14. If the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10 form. Id. § 542.15(a) and (b).

An inmate, however, challenging a DHO's decision does not file a BP-9. See Id. § 542.14(d)(2). "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." Id. DHO appeals must be filed on a BP-10 form and accompanied by a copy of the response the inmate received at the institutional level that the inmate wishes to appeal. Id. § 542.15(b)(1). "For DHO and UDC appeals, each separate incident report number must be appealed on a separate form." Id. § 542.14(c)(2). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id. § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id. § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id. § 542.15(a). An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id. § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id. § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct

14

the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id. § 542.17(c).

In his Response, Respondent argues that Petitioner's Section 2241 Petition should be dismissed because Petitioner did not exhaust his administrative remedies. (Document No. 6, pp. 6 – 8.) Respondent contends that a review of Petitioner's administrative remedy history "reveals that Petitioner has filed or attempted to file numerous administrative remedies throughout his BOP custody." (Id., p. 8.) Although Respondent acknowledges that "[s]everal of those remedies were in relation to the [Incident Report] at issue here," Respondent argues that all such administrative remedies were rejected. (Id.) Since Petitioner has not received a final decision from the Central Office, Respondent contends that Petitioner has not fully exhausted his administrative remedies. (Id.) To the extent Petitioner argues that he was unable to timely appeal to the Regional Office because Petitioner was not provided a copy of the DHO Report until April 2025, Respondent contends that such an argument is without merit. (Id.) Respondent notes that the DHO Report states that Petitioner was provided with a copy of the DHO Report on December 13, 2024. (Id.) Respondent asserts that "a presumption of regularity applies to government records, and Petitioner's self-severing claim regarding the timing of the receipt of the DHO Report is not sufficient to overcome the presumption." (Id.) Respondent concludes that Petitioner failed to exhaust his administrative remedies because "all of Petitioner's attempts to appeal the DHO Report were properly rejected as untimely." (Id.)

In support, Respondent submits the Declaration of Misty Shaw, a Paralegal at the at the BOP. (Document No. 6-1, pp. 2 - 3.) Ms. Shaw declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about

15

inmates' administrative remedy filings. (Id., p. 2.) Ms. Shaw states that Petitioner "has not exhausted administrative remedies related to the DHO action challenged in this case." (Id.) As an Exhibit, Ms. Shaw attaches a copy of Petitioner's Administrative History and "Administrative Remedy Generalized Retrieval" dated October 15, 2024. (Id., pp. 19 - 38.)

In his Reply and Motion for Summary Judgment and Memorandum in Support, Petitioner argues that "exhaustion has been constructively satisfied or should be excused." (Document No. 18 and Document No. 20, p. 2.) Petitioner argues that he was prevented from exhausting his administrative remedies based upon the "DHO's failure to serve [Petitioner] the summary report." (Document No. 20, p. 2.) Petitioner states that he "did everything he could to avail himself of his [administrative remedy] rights." (Id.) Petitioner explains that the "BOP could have granted him an extension of time in light of the late/non-service, but instead it again and again rejected Petitioner's grievances for technical non-compliance." (Id.) As Exhibits, Petitioner attaches a copy of his Declaration (Document No. 20-1) and pertinent copies of administrative remedies as detailed above (Document No. 20-2, pp. 1 – 36).

In his Declaration, Petitioner states that he received a copy of the DHO Report for the first time on April 4, 2025. (Document No. 20-1, p. 3.) Petitioner states that he "immediately and timely filed a BP-8 and 9 (administrative remedies) on DHO Bradley for staff misconduct and [Petitioner] timely filed the appeal to [his] DHO guilty findings." (Id.) Petitioner asserts that "[t]he administrative remedy policy cites being in-transit and away from the documents as grounds for obtaining an extension." (Id.) Petitioner claims that he "fit in the criteria for an extension to file, so after the initial rejections from the Regional and Central Offices, [Petitioner] obtained a signed statement from [his] Unit Team stating that the delay was not [Petitioner's] fault." (Id.) Petitioner,

16

however, states that the Regional Office "again rejected the appeal stating that the staff memo must be on BOP letter-head, which the Program Statement does not say." (Id.) Petitioner explains that he then "obtained another signed staff memo on BOP letterhead, but the Regional Office then rejected this without a proper explanation." (Id.) Petitioner claims that he "appealed the improper rejections to all levels." (Id., p. 4.) Thus, Petitioner asserts that he has "exercised diligence in trying to exhaust all available remedies." (Id.)

Although the record reveals that Petitioner attempted to appeal the DHO Report, Petitioner did not fully and properly exhaust his remedies. Petitioner contends that he did not receive a copy of the DHO Report until April 4, 2025. In support, Petitioner provides a copy of the DHO Report that appears to be signed by Petitioner and an unidentified individual on April 4, 2025. (Document No. 20-2, pp. 28 – 32.) Petitioner also provides a copy of "Memorandum for Administrative Remedy Coordinator" dated August 13, 2025, stating that Petitioner's property and legal documents were unavailable from December 26, 2024, until April 2, 2025, due to Petitioner being in-transit. (Id., p. 32.) Petitioner filed his DHO appeal to the Regional Office on April 15, 2025. (Document No. 6-1, p. 31.) On April 16, 2025, the Regional Office rejected Petitioner's appeal as untimely and for exceeding the page limit (Remedy ID No. 1237019-R1). (Document No. 6-1, p. 31 and Document No. 20-2, p. 13.) Petitioner then appealed to the Central Office on May 12, 2025, where his remedy was rejected on May 20, 2025 (Remedy ID No. 1237019-A1). (Document No. 6-1, p. 32 and Document No. 20-2, p. 14.) The Central Office notified Petitioner that it concurred with the rationale of the Regional Office for the rejection, Petitioner should follow the directions provided by the Regional Office, and resolve at the Regional Level prior to advancing to the Central Office. (Id.) Petitioner again appealed to the Central Office on May 20, 2025, where his

17

remedy was rejected on May 22, 2025 (Remedy ID No. 1237019-A2). (Document No. 6-1, p. 32 and Document No. 20-2, p. 15.) The Central Office notified Petitioner that Petitioner did not submit his request on a proper BP-11 form, it concurred with the rationale of the Regional Office for the rejection, Petitioner should follow the directions provided by the Regional Office and resolve at the Regional Level prior to advancing to the Central Office, and use a proper BP-11 form when resubmitting to the Central Office. (Id.) Petitioner resubmitted his request to the Regional Office on June 10, 2025, but his request was rejected on June 11, 2025 (Remedy ID No. 1237019-R2). (Document No. 6-1, p. 33 and Document No. 20-2, p. 16.) The Regional Office notified Petitioner that his appeal was untimely and he did not submit his request for appeal on a proper BP-10 form. (Id.) Petitioner resubmitted his request to the Regional Office on June 20, 2025, but his request was rejected as untimely on June 23, 2025 (Remedy ID No. 1237019-R3). (Document No. 6-1, p. 33 and Document No. 20-2, p. 17.) Petitioner resubmitted his request to the Regional Office on July 2, 2025, but his request was "voided and rejected" on the same day (Remedy ID No. 1237019-R4). (Document No. 6-1, p. 34 and Document No. 20-2, p. 21.) Petitioner submitted his second request to the Regional Office on July 2, 2025, but his request was rejected on August 1, 2025 (Remedy ID No. 1237019-R5). (Document No. 6-1, p. 34 and Document no. 20-2, p. 20.) The Regional Office notified Petitioner that his appeal was untimely, but Petitioner could resubmit "in proper form within 15 days of the date of the rejection notice" with staff verification stating the reason for the untimely filing on a "staff memo on letterhead." (Id.) Petitioner appealed to the Central Office on July 21, 2025, where his remedy was rejected on July 28, 2025 (Remedy ID No. 1237019-A3). (Document No. 6-1, p. 35 and Document No. 20-2, p. 19.) The Central Office notified Petitioner his appeal was premature because the appeal was

18

accepted by the Regional Office and it had response due date of August 31, 2025. (Id.) Petitioner again appealed to the Central Office on August 1, 2025, where his remedy was rejected on August 7, 2025 (Remedy ID No. 1237019-A4). (Document No. 6-1, p. 36 and Document No. 20-2, p. 21.) The Central Office notified Petitioner that his appeal was submitted at the wrong level, that Remedy ID No. 1237019-R4 was "voided and rejected" by the Regional Office, and for Petitioner to "please refer to 1237019-R5 rejections notice for filing instructions at Regional Level." (Id.) Petitioner resubmitted his request to the Regional Office on August 19, 2025, but his request was rejected on August 20, 2025 (Remedy ID No. 1237019-R7). (Document No. 6-1, p. 37 and Document No. 20-2, p. 22.) The Regional Office notified Petitioner that his appeal was rejected as untimely and explained that "this appeal was untimely from the initial submission 123019-R1." (Id.) Petitioner resubmitted his request to the Regional Office on August 18, 2025, but his request was rejected on August 22, 2025 (Remedy ID No. 1237019-R8). (Document No. 6-1, p. 36 and Document No. 20-2, p. 23.) The Regional Office notified Petitioner that his appeal was rejected as being untimely and for not being submitted on a proper BP-10 form. (Id.) Petitioner appealed to the Central Office on September 5, 2025, where his remedy was rejected on the same day (Remedy ID No. 1237019-A5). (Document No. 6-1, p. 38 and Document No. 20-2, p. 24.) The Central Office notified Petitioner that it concurred with the rational of the Regional Office for the rejection, Petitioner should follow the directions provided in Rejection Notice R8 and resolve the request at the lower level prior to resubmitting his BP-11 to the Central Office. (Id.)

Petitioner contends that he did not receive a copy of the DHO Report until April 4, 2025. In support, Petitioner provides a copy of his Declaration and a copy of the DHO Report that appears to be signed by Petitioner and another unidentified individual on April 4, 2025. (Document No.

19

20-1, pp. 1 – 5 and Document No. 20-2, pp. 28 – 32.) Petitioner's self-serving Declaration, however, is not sufficient to overcome the presumption of regularity afforded to government documents. Although Petitioner indicates that the unidentified signature is the signature of a prison staff member that issued him a copy of the DHO Report, there is no evidence of record to support such a finding. The signature is illegible and there is no name or job position identified beside the signature. (See Document No. 20-2, p. 31.) Even assuming the unidentified signature is that of a prison staff member and that Petitioner was provided a copy of the DHO Report on April 4, 2025, there is absolutely no evidence supporting a finding that Petitioner did not also receive a copy of the DHO Report on December 13, 2024. The undersigned finds that BOP's records are subject to the presumption of regularity and Petitioner has not submitted competent evidence to overcome this presumption. See Sexton v. United States, 2021 WL 1199834, * 4 (S.D.W.Va. March 29, 2021)(J. Volk)("Absent clear evidence that the BOP received the claim, the Court must presume that the agents of the United States 'properly discharged their official duties.'")

Next, Petitioner provides a copy of "Memorandum for Administrative Remedy Coordinator" dated August 13, 2025, stating that Petitioner's property and legal documents were unavailable from December 26, 2024, until April 2, 2025, due to Petitioner being in-transit. (Id., p. 32.) Although Petitioner has a staff memo on BOP letterhead dated August 13, 2025, stating that Petitioner did not have his legal documents due to his in-transit status from December 26, 2024, until April 2, 2025, such does not support a finding that Petitioner's initial DHO appeal was timely. The undersigned first notes that the staff memo is void of any information concerning when Petitioner was provided with a copy of the DHO Report, and the DHO Report indicates that such was provided to Petitioner on December 13, 2024. (See Document No. 20-2, pp. 28 – 32.) Section

20

542.14(d)(2) requires an inmate to submit his DHO appeal to the Regional Office within 20 days of receipt of the DHO Report. Even assuming Petitioner did not have assess to his legal documents from December 26, 2024 until April 2, 2025, Petitioner would have been required to file his DHO appeal by April 9, 2025. Petitioner, however, did not file his DHO appeal to the Regional Office until April 15, 2025. (Document No. 6-1, p. 31.) Therefore, the Regional Office properly rejected Petitioner's DHO appeal as untimely. Although the undersigned appreciates Petitioner's efforts to exhaust, the record reveals that Petitioner failed to properly exhaust his administrative remedies. Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." Wells v. Parkersburg Work Release Ctr. et al., 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id.(citing Woodford v. Ngo, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d. 368 (2006)). Since Plaintiff's administrative remedies were rejected as untimely, such could not properly exhaust his administrative remedies. See Pendleton v. Ames, 2023 WL 2541967, * 5 (S.D.W.Va. March 16, 2023)(finding that plaintiff's grievance that was rejected as untimely, could not have properly exhausted his administrative remedies).

Based on the foregoing, the undersigned respectfully recommends that the District Court dismiss the above action because Petitioner failed to properly exhaust the available administrative remedies *prior* to filing his Petition. Notwithstanding the foregoing, the undersigned will consider the merits of Petitioner's claim.

**2.      Due Process Violation Pursuant to <u>Wolff</u>:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court

21

must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations

22

omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials

23

in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Furthermore, "typographical errors in an official document such as an incident report do not support a due-process violation." Lytle v. Warden, FCI Bennettsville, 2018 WL 4560573, * 7 (D.S.C. March 30, 2018), report and recommendation adopted, 2018 WL 4178448 (D.S.C. Aug. 31, 2018); also see Bauer v. Warden FCI Williamsburg, 2017 WL 1284831, * 5 (D.S.C. Jan. 6, 2017), report and recommendation adopted, 2017 WL 318683 (D.S.C. Jan. 23, 2017)(finding that a typographical error "does not amount to a due process violation"). If it is determined that certain aspects of a petitioner's due process rights were violated, relief may still be denied if the petitioner is unable to show that an alleged constitutional violation had "substantial and injurious effect or influence" on the factfinder's determination of guilt. See Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004)(applying harmless error review to due process error in prisoner disciplinary proceeding.) Thus, "[r]elief may be granted to a petitioner pursuant to § 2241 if petitioner's . . . due process rights were violated *and* the violation was prejudicial." Rodriguez v. Ratledge, 2017 WL 5899931, * 4 (4th Cir. Nov. 29, 2017)(emphasis added).

Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Offense Code 113, prison officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.07. A review of the record reveals that Petitioner received all of the minimum due process safeguards set forth in Wolff. First, Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to

24

present a defense to those charges. The record reveals that Petitioner received written notice of the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of the re-written Incident Report on October 13, 2024,[3] and the DHO hearing was conducted on October 24, 2024. (Document No. 6-1, pp. 5 – 8, 10.) Although Petitioner complains that the rewriting of the Incident Report violated his due process rights, Petitioner is incorrect. See Razo v. Streeval, 2025 WL 961628, * 5 (W.D.Va. March 31, 2025)(finding petitioner could not show that his due process rights were violated by a rewrite of the incident report because the record plainly showed that petitioner received constitutionally sufficient notice of the charges against him); Byers v. Adams, 2006 WL 5781568, * 3 (E.D.Va. Aug. 9, 2006)(finding petitioner's claim that the incident report was "unlawfully rewritten" after he received an initial copy of the report "does not raise a constitutional issue" because *Wolff* requires only that he "receive written notice of the charges in advance of the disciplinary hearing."). Despite the fact that Petitioner's Incident Report was rewritten, Petitioner clearly received adequate notice prior to his disciplinary hearing. Petitioner also complains that he was not provided a copy of the UDC decision or given the opportunity to appeal the UDC decision pursuant to BOP policy. Petitioner wholly fails to allege any prejudice due to the foregoing. Petitioner merely argues that the foregoing constitutes a due process violation because staff did not comply with BOP regulations or policy. The failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Burnside v. Bragg, 2015 WL 1021135, * 5 (D.S.C. March 9, 2015)("[V]iolations of BOP regulations do not equate to a violation of due process"); Smith v.

---

[3] The initial Incident Report was provided to Petitioner on July 29, 2024. (Document No. 20-2, p. 25.) The Incident Report was rewritten, and the rewritten Incident Report was provided to Petitioner on October 13, 2024. (*Id.*, p. 27.)

Cross, 2010 WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees."); Kokoski v. Small, 2008 WL 3200811, * 19 (S.D.W.Va. Aug. 5, 2008)("[T]he only time requirement under *Wolff* is that the inmate receive written notice of the charge within 24 hours of a disciplinary hearing. There are no other time requirements necessary to comport with federal due process."); also see Massey v. Ballard, 2009 WL 2916889 (S.D.W.Va. Sept. 8, 2009)(citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983))("appellate review is not an element of due process."); Moses v. Bledsoe, 2004 WL 3317657, at * 4 (N.D.W.Va. Sept. 28, 2004)(stating "there is no due process right to an appeal process").

Second, the undersigned considers whether Petitioner was denied the opportunity to present evidence or witnesses in his defense. The record reveals that Petitioner was provided an "Inmate Rights at Discipline Hearing" form and a "Notice of Discipline Hearing Before the DHO" form. (Document No. 6-1, pp. 15 and 17.) On the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he did not request staff representation or wish to call any witnesses. (Id., p. 15.) During the DHO hearing, Petitioner confirmed that he did not want a staff representative or to call witnesses. (Id., pp. 10 – 13.) Petitioner does not dispute that he waived his right to a staff representative or the right to call witnesses. In his Petition, however, Petitioner complains that his ability to call witnesses was frustrated by the reporting officer's omission of the names of witnesses from the Incident Report. In support, Petitioner appears to rely upon Program Statement [P.S.] 5270.09. Title 28 C.F.R. § 541.5(a) provides that "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing."

Additionally, P.S. 5270.09 provides, in pertinent part, as follows:

> The description of the incident should contain all facts known by the employee that are not confidential. Anything unusual about the inmate's behavior should be noted. The reporting employee also lists persons (staff, inmates, others) at the scene, and physical evidence (weapons, property, etc.) the employee may have handled. The report reflects any actions taken, including use of force. The reporting employee signs the report, enters his/her title, date, and time, and forwards it to the Lieutenant. The description of the incident provides the inmate with specific evidence for which he/she may prepare a defense.

The undersigned finds that the Incident Report adequately described the incident and charges against Petitioner in compliance with 28 C.F.R. 541.5(a).[4] As explained above, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers, 97 F.3d at 94; Giovanni, 48 F.3d at 913; also see Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990); Smith v. Cross, 2010

---

[4] The Incident Report described the incident as follows:
> On 7/28/24 at approximately, 11:30 am, I officer, J. Ewing randomly conducted a body scan search of Inmate McKenith, Cedric, # 58452-056, in R&D after his visit. While escorting McKenith to R&D, I could see him messing around with something and placing it into his laundry bag. While the body scanner was searching, I also searched McKenith's laundry bag. I recovered what appeared to be contraband in a blue rubber ballon. It was in the pocket of an altered grey sweatshirt. The item was collected and taken to the lieutenant's office and given to SIS for further investigation. Inside the blue balloon, two additional balloons were found. The first balloon contained 39 cut cigarettes that had been soaked and dried in an unknown substance. The second balloon contained a white crystal powder and weighed 0.50 ounces. The clear cellophane wrapping had "14.6"written in black pen, indicating the substance's weight in grams. The white crystal substance was NIK tested (Narcotics Identification System kit) by SIS (Special Investigation Services). The testing sequence was conducted properly, beginning with test A, and the correct amount of substances was used. The results of test A indicated an immediate light orange to light brown color, prompting the use of test U. Upon placing the substance in test U, breaking the ampules from the left to right, the agitating each for thirty (30) second, the substance turned BLUE in color, indicating a positive result for Methamphetamine, and tested a positive for Methamphetamine.

(Document No. 6-1, p. 5.)

27

WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees."); Richardson v. Ortiz, 2021 WL 1502124, * 6 (D.N.J. April 16, 2021)(finding that the incident report adequately described the incident and charges against petitioner). Petitioner's conclusory claim that he was denied the opportunity to call witnesses because the reporting officer failed to list persons present at the scene, is insufficient. Petitioner completely fails to provide any details concerning these persons, such as the number of persons present and whether these persons were inmates or staff. The record does reveal that the DHO considered Petitioner's statement to the investigating Lieutenant to "[m]ake sure the other staff that was present make a statement." (Document No. 6-1, p. 12.) Even assuming other staff members were present when the reporting officer found the drugs in Petitioner's laundry bag, Petitioner does not dispute that the drugs were located in Petitioner's laundry bag. Petitioner merely argued that "[t]he drugs were not mine." Petitioner does not claim that there was any person present during the incident that could have been a favorable witness by stating that the drugs did not belong to Petitioner. Furthermore, Petitioner could have requested a staff representative for the purpose of assisting him with the identification of potential witnesses. To the extent Petitioner believed the Incident Report omitted the identity of witnesses, Petitioner was aware of such at the latest on October 13, 2024 (the date of the rewritten Incident Report was delivered to Petitioner). On October 21, 2024, however, Petitioner waived his right to have a full-time staff member represent him at the DHO Hearing. (Document No. 6-1, p. 15.) Pursuant to BOP regulations and policies, a staff representative may "assist [an inmate] by speaking with and scheduling witnesses, obtaining written statements, and

28

otherwise helping [the inmate] prepare evidence for presentation at the DHO's hearing." See 28 C.F.R. § 541.8(d); P.S. 5270.09.

Furthermore, Petitioner asserts that he submitted documentary evidence and the DHO falsified the DHO Report to say that Petitioner did not. A review of the record reveals that the DHO considered the following documentary evidence: "Staff Memorandum, Photo Evidence, and Disciplinary History." (Document No. 6-1, p. 11.) In his Petition, Petitioner fails to describe what documentary evidence he allegedly presented to the DHO, and the DHO Report fails to indicate that any such evidence was presented by Petitioner. The Fourth Circuit has recognized that there is a "presumption of regularity" which "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." Almy v. Sebelius, 679 F.3d 297, 309 (4th Cir. 2012)(quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)); see also Mira-Avila v. Barr, 756 Fed. Appx. 329, 331 (4th Cir. 2019). The Fourth Circuit has applied this presumption of regularity to records and proceedings produced in the prison disciplinary context. See Craddock v. Rhodes, 833 F.2d 1004 (4th Cir. 1987)(per curiam)("No reason has been given that we should go behind the presumption of regularity which attaches to official records ..."). Minor errors or inconsistencies in the agency record are generally insufficient to overcome this presumption of regularity as it relates to official acts and records. See Coreas v. Holder, 526 F. Appx. 322, 326 (4th Cir. 2013)("Nevertheless, we are unable to say that the government's failure in this regard is enough to overcome the presumption of regularity that is attached to the DHS's issuance of a notice to appear."); see also Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec., 2017 WL 3189446, at *9 (D. Md. July 27, 2017). When the issue in question is

29

officials' adherence to their own agency procedures, "[t]he presumption is 'sufficient to sustain the inference' that the agency did 'whatever was appropriate' to effectuate the procedure." Petrelle v. Weirton Steel Corp., 953 F.2d 148, 153–54 (4th Cir. 1991)(quoting R.H. Stearns Co. v. United States, 291 U.S. 54, 63 (1934)). Accordingly, federal courts have generally been unwilling to credit a prisoner's assertion that the records produced in the course of prison disciplinary proceedings are falsified or incorrect absent convincing evidence. See Dunmore v. Wendt, 2007 WL 1848017, at *9 (N.D.W. Va. June 25, 2007)(refusing to credit inmate's assertion that DHO falsified report and ignored requests for witnesses); Thomas v. Phillips, 2012 WL 2064531, at *1 (S.D.W. Va. June 7, 2012)(denying petitioner's claim that, among other violations, prison officials had falsified the hearing record); Lytle v. Warden, 2018 WL 4560573, at *9 (D.S.C. Mar. 30, 2018), report and recommendation adopted, 2018 WL 4178448 (D.S.C. Aug. 31, 2018)(same); Foster v. Rivera, 2007 WL 3002330, at *6 (D.S.C. Oct. 10, 2007)(petitioner unable to advance claims refuted by documents he signed in disciplinary record); Russell v. Wilson, 2015 WL 4479744, at *5 (E.D. Va. June 17, 2015), report and recommendation adopted, 2015 WL 4479746 (E.D. Va. July 20, 2015) (same). In the instant case, Petitioner has not presented evidence sufficient to rebut the presumption of regularity as applied to the disciplinary record produced by Respondent. Petitioner fails to allege any details concerning the alleged documentary evidence that he presented to the DHO. Petitioner merely concludes that he presented documentary evidence and the DHO falsified the DHO Report to exclude Petitioner's documentary evidence. Petitioner then attaches as Exhibits to his Reply, documents entitled "Documentary Evidence: Objection and Challenges" and "Documentary Evidence: Addendum to Challenges and Objection." (Document No. 20-2, pp. 37 – 46.) This alleged "documentary evidence" is merely a handwritten document created by

30

Petitioner containing his arguments concerning procedural and policy violations occurring thorough out his disciplinary proceedings.[5] The "documentary evidence" does not offer any information concerning Petitioner's alleged innocence of the actual disciplinary charge (Offense Code 113). Pursuant to BOP regulations and policies, the DHO will consider all *evidence* presented during the hearing and the DHO's written report will document "[t]he evidence relied on by the DHO" to support the DHO's decision. See 28 C.F.R. § 541.8(f) and (h); P.S. 5270.09. Therefore, the undersigned finds that Petitioner has not presented evidence sufficient to rebut the presumption of regularity as applied to the disciplinary record produced by Respondent and there is absolutely no indication that the DHO falsified his written report.

Third, the undersigned considers whether Petitioner received a written statement of the evidence relied upon and the reasons for the disciplinary action. Petitioner acknowledges that he received a copy of the DHO Report, but merely complains that the DHO Report was not provided to him within 15 days pursuant to P.S. 5270.09. Specifically, Petitioner asserts that his due process rights were violated when he "did not receive a written copy of the DHO Report within the allotted time permitted by Program Statement 5270.09" and the DHO "falsified the DHO report to say that [Petitioner] received a copy of the report on 12/13/2024." As explained above, the undersigned finds that BOP's records are subject to the presumption of regularity and Petitioner has not submitted competent evidence to overcome this presumption. The regulations provide that an inmate "will receive a written copy of the DHO's decision following the hearing." See 28 C.F.R. § 541.8(h). P.S. 5270.09 provides that that an inmate is "ordinarily" entitled to a copy of the DHO's decision within 15 work days of the DHO's decision. See P.S. 5270.09 ("The DHO gives the

---

[5] The undersigned notes the striking similarity of the arguments contained in Petitioner's instant Petition and the attached "Documentary Evidence."

31

inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.") The record reveals that the DHO Hearing was conducted October 24, 2024, DHO's written decision was entered December 13, 2024, and Petitioner received a copy of the DHO Report on the same day (December 13, 2024). (Document No. 6-1, pp. 10 - 13.) The undersigned, therefore, finds that prison officials did not violate Section 541.8 or P.S. 5270.09. Even assuming Petitioner did not receive a copy of the DHO Report until April 4, 2025, such did not result in a due process violation. Again, as stated above, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith, 2010 WL 5525178, at * 5; Shahan v. Ormond, 2018 WL 6681210, * 5 (E.D.Va. Dec. 19, 2018)("To the extent that [petitioner] claims that staff violated BOP Program Statement 5270.09 by failing to provide him with a copy of the DHO Report within the advisory fifteen-day period, the BOP's failure to abide by internal directives of this ilk does not give rise to a claim for habeas relief.") The record clearly reveals that Petitioner received a written copy of the DHO Report, which clearly indicated the evidence relied upon and the reasons for the disciplinary action. (Id.) Based upon the foregoing, the undersigned finds that the Wolff requirements were satisfied.

**3.    Insufficient Evidence:**

Petitioner appears to contend that there was insufficient evidence to support the DHO's decision. (Document Nos. 1 and 20-1.) Specifically, Petitioner contends that he should not be held accountable for drugs found in his laundry bag because there was insufficient evidence that the drugs belonged to Petitioner. (Id.) Petitioner claims he had a note from an unidentified inmate (or inmate using a false name) claiming ownership of the drugs that were found in Petitioner's laundry

32

bag. (Id.) Petitioner indicates that he attempted to present this note as evidence during his DHO hearing, but the DHO refused to consider the evidence. (Id.) Petitioner further argues that he has "new evidence" to support his "actual innocence." (Id.) Petitioner states that this "new evidence" is an "Affidavit" from an inmate again claiming ownership of the drugs that were found in Petitioner's laundry bag. (Id.) Petitioner, however, states that this "Affidavit" is "new evidence" because it includes the name the inmate. (Id.)

In Response, Respondent argues that there was sufficient evidence to support the DHO's decision. (Document No. 6, pp. 14 – 16.) Respondent explains that "the DHO noted in detail the evidence reviewed and the basis for his findings, including his reasoning behind credibility determinations." (Id., p. 16.) Respondent explains that "[i]n weighing this evidence, the evidentiary standard in the challenged DHO hearing was fulfilled as some evidence exited to support the action taken by the DHO, and the conclusion was reach by the DHO based on the greater weight of the evidence." (Id.) Furthermore, Respondent argues "[t]here is nothing in BOP policy to permit inmates to continue to submit additional challenges and evidence indefinitely after the close of the disciplinary action." (Id.) Respondent explains that such "a policy would prevent finality in the resolution of any disciplinary mater, including those that hold inmates accountable for their disciplinary code violations." (Id.)

The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." Johnson v. Warden, FCI Williamburg, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), aff'd   597 Fed.Appx. 161 (4th Cir.

2015), cert. denied, 577 U.S. 1008, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985)("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.") This standard is "extremely broad in scope and presents a very low burden for prison officials to meet." Tyler v. Hooks, 945 F.3d 159, 171 (4th Cir. 2019), cert. denied, 590 U.S. 950, 140 S.Ct. 2785, 206 L.Ed.2d. 950 (2020). The requirement that the disciplinary authority's findings be supported by "some evidence" "does not in any way imply that prison disciplinary bodies must consider all possible evidence." Landry v. Adams, 2007 WL 869224, * 4 (E.D.Va. March 19, 2007)(finding petitioner's due process rights were not violated by the unavailability of surveillance video evidence). The Fourth Circuit has explained that in distinguishing "some evidence" from "no evidence," "some evidence" must "possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause." Tyler, 945 F.3d at 171(granting *habeas* relief "due to a total absence of evidence in the record, even under the 'some evidence' standard."). When reviewing a prison disciplinary hearing, however, "it is not the job of the courts to assess the weight of the evidence" but "only to determine whether the guilty finding has support of some fact or any evidence at all." Masengale v. Streeval, 2020 WL 4227559, *4 (W.D.Va. July 23, 2020). As the Supreme Court noted in Hill:

> Ascertaining whether this standard is satisfied does not require examination of the
> entire record, independent assessment of the credibility of witnesses or weighing of

the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56, 105 S.Ct. at 2773-74.

The undersigned finds that prison staff and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of violating Offense Code 113. The finding was supported by the evidence and the imposed sanctions were lawful and appropriate. In addition to the Incident Report, the DHO considered the staff memorandum from SIS Horn, photo evidence, Petitioner's disciplinary history, video evidence, and Petitioner's statements to the investigator, UDC, and DHO. (Document No. 6-1, pp. 11 – 12.) In finding that Petitioner violated Code 113, the DHO specifically stated that it relied upon the following:

> You were advised of your rights before the Discipline Hearing Officer and stated that you understood those rights. You requested no staff representative or witnesses and presented no documentary evidence on your behalf.
>
> The DHO finds that you committed the prohibited act of a Code 113: Possession of Drugs.
>
> The Reporting Officer states, "On 7/28/24 at approximately 11:30 am, I officer J. Ewing randomly conducted a body scan search of inmate MCKENITH, CEDRIC, #58452-056, in R&D after his visit. While escorting Mckenith to R&D, I could see him messing around with something and placing it into his laundry bag. While the body scanner was searching, I also searched McKenith's laundry bag. I recovered what appeared to be contraband in a blue rubber balloon. It was in the pocket of an altered grey sweatshirt. The item was collected and taken to the lieutenants' office and given to SIS for further investigation. Inside the blue balloon, two additional balloons were found. The first balloon contained 39 cut cigarettes that had been soaked and dried in an unknown substance. The second balloon contained a white crystal powder and weighed 0.50 ounces. The clear cellophane wrapping had '14.6' written in black pen, indicating the substance's weight in grams. The white crystal substance was NIK tested (Narcotics Identification System kit) by SIS (Special Investigation Services). The testing sequence was conducted properly, beginning with test A, and the correct amount of substance was used. The results of test A indicated an immediate light orange to light brown color, prompting the use of test

35

U. Upon placing the substance in test U, breaking the ampules from left to right, and agitating each for thirty (30) seconds, the substance turned BLUE in color, indicating a positive result for Methamphetamine. and tested a positive for Methamphetamine."

The DHO considered staff memorandum from SIS Tech. J. Horn, On July 29, 2024, the Special Investigation Services (SIS) tested a sample of a white crystal substance found in the possession of inmate Cedric McKenith, Reg. No. 58452-056, as he was leaving the visitation room. Correctional staff discovered a blue rubber balloon and reported it to the operations lieutenant. SIS was notified and took possession of the balloon to test its contents and then placed it into evidence control. Inside the blue balloon, two additional balloons were found. The first balloon contained 39 cut cigarettes that had been soaked and dried in an unknown substance. The second balloon contained a white crystal powder weighing 0.50 ounce. The clear cellophane wrapping had "14.6" written in black pen, indicating the substance's weight in grams. The white crystal substance was tested using the Narcotics Identification System kit (NIK). The testing sequence was conducted properly, beginning with test A, and the correct amount of substance was used. The results of test A indicated an immediate light orange to light brown color, prompting the use of test U. Upon placing the substance in test U, breaking the ampules from left to right, and agitating each for thirty (30) seconds, the substance turned BLUE in color, indicating a positive result for Methamphetamine.

The DHO considered the photo evidence, which reaffirms the reporting officer's statement to the Methamphetamine recovered.

The DHO conducted a review of your disciplinary history, which reveals you have history of possession of drugs.

The DHO made a review of the video evidence, which all video evidence was found to be inconclusive to what had occurred due to location of the misconduct.

The DHO considered your statement to the investigating Lieutenant stating, "Make sure the other staff that was present make a statement. | want the cameras reviewed in the corridor by medical reviewed. He thinks | was reaching and putting something in the laundry bag."

The DHO considered your statement to the UDC stating, "This is still going on? I'm not guilty."

The DHO considered your statement to the DHO stating, "The drugs were not mine."

The DHO considered your statement and denial to the charge against you but was

36

not convinced. The DHO believes you would deny the charge to avoid possible disciplinary sanctions, if found guilty. You failed to provide any exculpatory evidence on your behalf. The officer found the drugs in a laundry bag which you had physical possession of. Therefore, you were in possession of the drugs recovered. The DHO finds the staff member s statement and observations are more credible and believable than yours. In addition, you have a history of engaging in this type of misconduct, which displays to the DHO your propensity to engage in such an act. The DHO based the decision on the greater weight of the evidence. Greater weight is given to the incident report, Staff Memorandum, Photo Evidence, and your Disciplinary History.

Therefore, based on the greater weight of the evidence the DHO finds committed the prohibited act of Code 113: Possession of Drugs.

(Id., pp. 11 - 13.)

The record further reveals that the DHO Officer considered and rejected Petitioner's claim that the drugs were not his. The DHO specifically explained that he found the staff member's statement more creditable than Petitioner's statement. The staff member stated that he observed Petitioner "messing around with something and placing it into his laundry bag." The drugs were found in Petitioner's possession (laundry bag), which Petitioner does not dispute. See McClung v. Hollingworth, 2007 WL 1225946, * 3 (4th Cir. Apr. 26, 2007)("[S]ince a dangerous weapon was discovered in a cell that was the 'exclusive domain' of McClung and his cellmate, the constructive possession rule provides the necessary 'some evidence' sufficient to sustain McClung's disciplinary conviction."); also see Scott v. Stewart, 2017 WL 1807139, * 3 (D.Md. May 5, 2017)(rejecting prisoner's due process challenge to the lack of DNA or fingerprint analysis to support a claim of construction possession); Gonzalez-Martinez v. Drew, 2011 WL 6982247 (D.S.C. Dec. 16, 2011)(finding "some evidence" to support the DHO's decision that petitioner was in possession of a weapon where the weapon was located under a locker in Petitioner's cell); Perez v. Rios, 2009 WL 499141 (E.D.Ky. Feb. 27, 2009)(finding sufficient evidence to support DHO's

37

finding that because petitioner was in control of his cell area, he was in possession of a hazardous tool). Petitioner further has a disciplinary history involving the same misconduct. Although Petitioner places much emphasis on the fact that he had a "note" from an unidentified inmate claiming ownership and responsibility for placing the drugs in Petitioner's laundry bag, such does not discount the undisputed fact that the drugs were found in Plaintiff's possession. See Ray v. Masters, 2017 WL 975948 (S.D.W.Va. Feb. 13, 2017)(finding "some evidence" to support DHO findings even though petitioner claims someone planted the weapon in his cell and video footage should show "a number of other inmates [went] in and out of [his] cell on the day of the incident"); Edmonds v. Ziegler, 2014 WL 321050 (S.D.W.Va. Jan. 29, 2014)(finding "some evidence" to support the DHO findings even though inmate claimed he was unaware of the weapon and it must have been left prior to his assignment to the cell). As explained above, "it is not the job of the courts to assess the weight of the evidence" but "only to determine whether the guilty finding has support of some fact or any evidence at all." Even if this Court was allowed to weigh the evidence, the undersigned finds that a "note" allegedly prepared by an unidentified inmate carries little to no weight as exculpatory evidence. (See Document No. 20-1, p. 5.) The DHO determined that Petitioner was guilty of possession of drugs. Again, it is undisputed that drugs located in Petitioner's laundry bag. Based upon the foregoing, the undersigned finds sufficient evidence to support the DHO's decision.

Finally, the undersigned will consider Petitioner's claim of actual innocence based upon "new" evidence. The alleged "new" evidence is an unsworn "Affidavit" from Inmate Seaton Letts claiming ownership and responsibility for the drugs located in Petitioner's laundry bag. (See Document No. 20-2, p. 47.) "[A] claim of actual innocence is generally not a basis for federal

38

habeas corpus relief." Mercery v. Phelps, 2021 WL 2690176, *5 (D.S.C. May 13, 2021), report and recommendation adopted, 2021 WL 2688842 (D.S.C. June 30, 2021)(quoting Williams v. Warden, 2017 WL 8794895, *4 (D.S.C. Oct. 12, 2017)), report and recommendation adopted, 2018 WL 718959 (D.S.C. Feb. 5, 2018), aff'd, 744 Fed. Appx. 179 (4th Cir. Dec. 4, 2018)); also see Feather-Gorbey v. Warden, 2023 WL 6412202, * 15 (S.D.W. Va. Aug. 21, 2023), report and recommendation adopted, 2023 WL 6444899 (S.D.W.Va. Sep. 29, 2023)(C.J. Volk). Additionally, the "due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." Mercery, 2021 WL 2690176, at *5 (quoting Jones v. McCaughtry, 6 Fed. Appx. 371, 372-73 (7th Cir. 2001)). The foregoing is not "new" evidence. Besides containing the identity of the inmate, there is no material difference between the "note" and unsworn "Affidavit."[6] (See Document No. 20-1, p. 6 and Document No.

---

[6] The undersigned further notes that the unsworn "Affidavit" from Inmate Letts would be inadmissible and not taken into consideration by the Court. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)(An unsworn affidavit is considered deficient and not taken into consideration by the Court); *also see Edens v. Kennedy*, 112 Fed.Appx. 870 (4th Cir. 2004)(finding handwriting expert's affidavit was insufficient to raise a triable issue of fact inasmuch as the affidavit was unsworn and unaccompanied by any sworn supporting declaration); *Watts v. Foster*, 838 F.2d 469 (4th Cir. 1988)(stating that "an unsworn document is not an 'affidavit'"). There is a statutory exception that permits the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits. Similar to *Young v. Lacy*, the undersigned will consider the admissibility of Inmate Letts' "Affidavit" as an unsworn declaration. *See Young v. Lacy*, 2020 WL 1677406, * 6 (S.D.W.Va. April 6, 2020)(J. Faber). In *Young*, Judge Faber explains, in pertinent part, as follows:

> 28 U.S.C. § 1746 allows a written unsworn declaration to substitute for an affidavit, so long as the unsworn declaration is subscribed in proper form as true under penalty of perjury. Fed. R. Civ. P. 56 advisory committee's note (citing 28 U.S.C. § 1746). The declarations at issue here are deficient because they contain no statement that they were true declarations made under penalty of perjury. See, e.g., *Thompson v. Clarke*, 2020 WL 1124361, at *7 (W.D. Va. Mar. 6, 2020) (holding that because the affidavit was neither notarized nor did it include any language that it was declared under penalty of perjury, "it fails to satisfy even the basic requirements for unsworn declarations under penalty of perjury per 28 U.S.C. § 1746"); *Trapaga v. Cent. States Joint Bd. Local 10*, 2007 WL 1017855, at *5 (N.D.

20-2, p. 47.) Petitioner further acknowledges he was aware of the "note" at the time of his DHO hearing, and the record reveals that the DHO considered Petitioner's claim that the drugs were not his. Based upon the foregoing, the undersigned finds no due process violation and the "some evidence" standard was satisfied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1) and Motion for Summary Judgment (Document No. 18), **GRANT** Respondent's request for dismissal (Document No. 6), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States Chief District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific

---

Ill. Mar. 30, 2007) ("[A] court may not consider an unsworn declaration unless it subjects the declarant to penalties of perjury"); *United States v. Terrell Cty., Georgia*, 2006 WL 8445865, at *1 (M.D. Ga. July 12, 2006) ("As the Affidavit was improperly notarized and does not alternatively state that Defendant Bowens made his declaration under penalty of perjury, as is permitted by 28 U.S.C. § 1746, the same must be discarded.")

*Young*, 2020 WL 1677406, at * 6. Based upon the foregoing, the undersigned finds that Inmate Letts' Affidavit fails to satisfy even the basic requirement for an unsworn declaration under the penalty of perjury because it does not include any language that it was declared under the penalty of perjury.

40

written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: July 13, 2026.



Omar J. Aboulhosn
United States Magistrate Judge

41